**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **SITELOCK, LLC**, | Case No. 3:21-mc-00222-SI |
| Plaintiff, | Related Case No. 2:19-cv-02746-DWL<br>U.S. District Court, District of Arizona |
| v. | **OPINION AND ORDER ON MOTION** |
| **GODADDY.COM, LLC**, | **TO ENFORCE RULE 45 SUBPOENA** |
| Defendant. | **ON NONPARTY HOSTPAPA, INC.** |

Thomas A. Gilson, BEUS GILBERT PLLC, 701 N. 44th Street, Phoenix, AZ 85008; and Kevin B. Huff, Leslie V. Pope, and Thomas G. Schultz, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC, 1615 M Street N.W., Suite 400, Washington, D.C. 20036. Of Attorneys for Plaintiff SiteLock LLC.

Jodi A. McDougall, Paula L. Zecchini, Nathan Dooley, Sydney R. Hitchcock, COZEN O'CONNOR, 999 Third Avenue, Suite 1900, Seattle WA 98104. Of Attorneys for Defendant-Movant GoDaddy.com LLC.

Ronald H. Hoevet, HOEVET OLSON HOWES PC, 1000 SW Broadway, Suite 1740, Portland, OR 97205. Of Attorneys for Subpoenaed Nonparty-Respondent HostPapa, Inc.

**Michael H. Simon, District Judge.**

Before the Court is a motion to enforce a subpoena for documents issued under Rule 45 of the Federal Rules of Civil Procedure by a party in a federal lawsuit pending in the District of Arizona. That party issued the subpoena to a nonparty Canadian corporation with its principal place of business in Ontario, Canada. The Canadian corporation states that it has no employees,

subsidiaries, or shareholders in the United States. The Canadian corporation, however, provides website hosting services, including to customers in the United States, and recently purchased assets, including a domain name and a customer list, from an Oregon limited liability company (LLC). The issuing party delivered a copy of the subpoena to the registered agent for the Oregon LLC and contends that the Oregon LLC is a subsidiary of the Canadian corporation. The issuing party also delivered a copy of the subpoena to an individual in Texas, who has stated on several of his personal social media platforms that he is a vice president of marketing for the Canadian corporation. The Canadian corporation challenges service, personal jurisdiction in Oregon, and the scope of the subpoena. Because the issuing party did not properly serve the Rule 45 subpoena on the Canadian corporation and that entity did not waive formal service, as more fully discussed below, the Court denies the motion to compel solely on those grounds and declines to reach the issues of personal jurisdiction or scope of the subpoena.

## STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure describes the general scope and limits of federal civil discovery. In relevant part, the rule states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 45 allows a party in a federal civil lawsuit to serve a subpoena on any person, including a nonparty. A subpoena may require the subpoenaed person to produce "documents, electronically stored information, or tangible things in that person's possession, custody, or

control." Fed. R. Civ. P. 45(a)(1)(A)(iii). When a subpoena requires a person to disclose "a trade secret or other confidential research, development, or commercial information," the court for the district where compliance is required may quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(B)(i). In addition, a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). What constitutes an "undue burden" is the same when a nonparty is subpoenaed under Rule 45 as when a party receives a request for production under Rule 34. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("[W]e will not read 'undue burden' differently just because a non-party was subpoenaed.").

Rule 45 also requires that the subpoena be served by "delivering a copy to the named person," Fed. R. Civ. P. 45(b)(1). The rule adds that "[a] subpoena may be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). Rule 45 further provides that "28 U.S.C. § 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country." Fed. R. Civ. P. 45(b)(3). As one district court has explained, however, a foreign corporation "is not a United States national or resident and therefore cannot be served with a subpoena under Rule 45." *Viasat, Inc. v. Space Sys./Loral, LLC*, 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014).

Rule 28(b) of the Federal Rules of Civil Procedure discusses the taking of a deposition in a foreign country but says nothing about serving a subpoena for documents on a foreign national, resident, or entity not found in the United States. Similarly, Rule 45 is silent on whether a nonparty foreign national, resident, or entity not found in the United States can be served with a subpoena for documents under Rule 45 and, if so, how. That is the threshold issue presented in the pending motion to compel.

# BACKGROUND

## A. The Underlying Lawsuit

In April 2019, SiteLock, LLC (SiteLock) sued GoDaddy.com, LLC (GoDaddy) in federal court in the District of Arizona. *SiteLock, LLC v. GoDaddy.com, LLC*, Case No. 2:19-cv-02746-DWL (D. Ariz.) (the Underlying Lawsuit). As alleged by SiteLock in its Complaint, SiteLock offers website security services to customers, including small businesses. These services include scanning a customer's website for malware, monitoring web traffic to a customer's website, and reviewing the source code of a customer's website to detect potential vulnerabilities. SiteLock sells its services by offering annual or monthly subscriptions to its customers. SiteLock also alleges that GoDaddy offers a wide array of website-related services, including website hosting, domain name registration, and virtual private servers. SiteLock further asserts that GoDaddy has millions of customers throughout the world that use GoDaddy to create and maintain websites.

In November 2013, SiteLock and GoDaddy entered into a reseller agreement (the Reseller Agreement) under which GoDaddy agreed to market and sell SiteLock's website security services to GoDaddy's customers through GoDaddy's platform as part of a larger suite of website services offered by GoDaddy. Several addenda modified or clarified the Reseller Agreement. As alleged by SiteLock in its Complaint, when a customer orders a subscription to SiteLock's services through GoDaddy's platform, the customer has the right to use the purchased SiteLock service for a set period. After ordering a subscription to SiteLock's services, the customer could, but need not, "activate" those services to run on the customer's website. After a customer activates a SiteLock service, SiteLock would begin performing the specified service (*e.g.*, scanning, monitoring web traffic, or reviewing source code) for the customer. According to SiteLock, the customer paid GoDaddy for access to SiteLock's services at the time of the order, regardless of whether the customer later activated, or used, any SiteLock services. SiteLock also

alleges that the Reseller Agreement between GoDaddy and SiteLock provides that each time a customer "order[ed]" a SiteLock "subscription" through GoDaddy's platform, GoDaddy was required to pay SiteLock a specified sum of money but could keep the remainder of the purchase price as a commission.

SiteLock further alleges that GoDaddy has committed numerous material breaches of the Reseller Agreement. SiteLock contends that almost immediately after signing that agreement, GoDaddy began breaching it by failing to pay SiteLock for each customer "order" of a SiteLock "subscription" through GoDaddy's platform, as required by the Reseller Agreement. Instead, GoDaddy allegedly paid SiteLock only if a customer who ordered a SiteLock subscription later activated one or more of SiteLock's services. SiteLock also alleges that in June 2016, after SiteLock had repeatedly objected to GoDaddy's failure to pay for all orders, GoDaddy unilaterally stopped providing reports to SiteLock showing the number of customers who ordered SiteLock subscriptions through GoDaddy's platform.

In July 2016, SiteLock and GoDaddy signed a Third Addendum to the Reseller Agreement, under which GoDaddy allegedly was required, beginning not later than November 2016, to activate SiteLock's services automatically whenever a customer ordered a subscription through GoDaddy's platform. SiteLock alleges that GoDaddy breached the Third Addendum by failing to implement this automatic activation. SiteLock further alleges that, in September 2017, SiteLock discovered that GoDaddy was promoting its own competing website security service (Sucuri) by, among other things, misusing SiteLock's trademark. According to SiteLock, when customers went to GoDaddy's website and clicked on SiteLock's name to order a SiteLock subscription, they were surreptitiously redirected to GoDaddy's own Sucuri website and invited to purchase that competing product, notwithstanding GoDaddy's contractual obligation to

promote SiteLock's services. Based on these allegations, SiteLock asserts claims of breach of contract, unjust enrichment, violation of the Lanham Act (15 U.S.C. § 1125), and unfair competition in violation of Arizona common law.

In its Answer to SiteLock's Complaint, GoDaddy denies many of the material allegations asserted by SiteLock. GoDaddy also asserts 27 affirmative defenses, including (most relevant for the pending dispute) an affirmative defense of set-off. In its Eleventh Affirmative Defense, GoDaddy alleges that SiteLock's claims are barred, in whole or in part, by the doctrine of recoupment or set-off and that GoDaddy is entitled to offset and recoup against any judgment that may be entered for SiteLock all obligations owing to GoDaddy. In support of this affirmative defense, GoDaddy contends that SiteLock breached the "most favored nation" (MFN) and "upsell" clauses in the parties' contracts, including the Reseller Agreement.

In the Underlying Lawsuit, SiteLock and GoDaddy have brought many discovery disputes to the federal court in Arizona. In an order issued in October 2020, the District Judge in the Underlying Lawsuit described the situation as follows:

> The discovery process has not, to put it mildly, gone smoothly. Time and again, the parties have resorted to bickering and fighting in lieu of seeking cooperative, productive solutions, then deluged the Court with voluminous filings related to discovery disputes. Things got so bad that the parties began using a court reporter to transcribe their private meet-and-confer sessions. And, remarkably, even the use of a court reporter wasn't enough to prevent the parties from arguing over what was said during these sessions— one side has now accused the other of improperly conspiring with the court reporter to alter the transcripts of a meet-and-confer session.

*SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2020 WL 6135189, at *1 (D. Ariz. Oct. 19, 2020).

**B.  The Subpoena**

GoDaddy seeks document discovery against nonparty HostPapa, Inc. (HostPapa) relating to GoDaddy's contention in the Underlying Lawsuit that SiteLock breached the MFN provision in the Reseller Agreement. As explained by GoDaddy, in the Underlying Lawsuit GoDaddy sought discovery related to its defense based on the MFN provision, and SiteLock produced several reseller agreements that SiteLock had with other companies, including HostPapa. HostPapa asserts that it is a Canadian corporation organized under Ontario law and headquartered in Ontario, Canada. HostPapa's primary business is providing website hosting services to individuals and small businesses. HostPapa also states that SiteLock is a former business partner of GoDaddy and a current business partner of HostPapa. Finally, HostPapa adds that it has no employees or subsidiaries in the United States, and its shareholders are all Canadian citizens or trusts.

GoDaddy asserts that it obtained in discovery from SiteLock in the Underlying Lawsuit an agreement between SiteLock and HostPapa. According to GoDaddy, that agreement shows that SiteLock gave HostPapa more favorable pricing terms than SiteLock gave to GoDaddy in the Reseller Agreement. Thus, GoDaddy seeks discovery against nonparty HostPapa to learn more about the pricing terms that SiteLock gave to HostPapa and the features of the SiteLock products that HostPapa offered.

Attempting to obtain these documents from HostPapa, GoDaddy delivered subpoenas in the United States to two people. GoDaddy delivered one subpoena addressed as follows: "HostPapa, Inc., c/o Canvas Dreams, LLC, 921 SW Washington St., Suite 710, Portland, OR  97205." Canvas Dreams, LLC (Canvas Dreams) is an Oregon LLC owned by David Anderson. ECF 6-3. At all relevant times, Mr. Anderson was the registered agent for Canvas Dreams. ECF 2-2 at 6. On November 18, 2020, GoDaddy's process server delivered a copy of

the subpoena to Mr. Anderson in Oregon. ECF 2-2 at 2. The Court refers to this subpoena as the "Anderson Subpoena."

The Oregon Secretary of State's Corporation Division website shows that Canvas Dreams is the registrant and authorized representative for another Oregon LLC, Canvas Host, LLC (Canvas Host). ECF 2-2 at 4. Mr. Anderson states in his declaration that in 2020 Canvas Dreams sold to HostPapa the online brand of "Canvas Host," the domain of "canvashost.com," and the customer list and digital assets of Canvas Host customers. Mr. Anderson adds in his declaration that he did *not* sell to HostPapa the legal entity Canvas Dreams, LLC, nor the "dba name registration of Canvas Host," nor any physical component attached to the Portland office space of Canvas Dreams. ECF 6-3. Mr. Anderson also states that neither he nor Canvas Dreams have been in any way connected to the operations of HostPapa at any time, past or present. *Id*.

In his declaration, HostPapa's chief executive officer Jamie Opalchuk confirms that in 2020, HostPapa purchased assets from Canvas Dreams, including its customer list and the domain name "canvashost.com." ECF 6-4, at ¶ 5. He adds that HostPapa did not acquire any interest in Canvas Dreams, and, aside from that single asset-purchase transaction, HostPapa has no relationship with Canvas Dreams or Mr. Anderson and neither HostPapa nor Canvas Dreams has any direct or indirect ownership interest in the other. *Id*. GoDaddy offers no evidence to the contrary.

GoDaddy also delivered a second subpoena addressed as follows: "HostPapa, Inc., c/o Chris Whitling, 18929 Colonial Manor Ln., Pflugerville, TX 78660." On November 18, 2020, GoDaddy's process server delivered a copy of this subpoena to Christopher Whitling in Texas. The Court refers to this subpoena as the "Whitling Subpoena."

On both his personal LinkedIn page and his personal Facebook profile, Mr. Whitling held himself out as HostPapa's "Vice President of Marketing." Mr. Whitling states in his declaration that he is a marketing consultant at Promo People Corp., a Nevada corporation. He adds that he is not and never has been employed by HostPapa and that he provides marketing consulting and contractor services to HostPapa only through Promo People Corp. He also states that he has never been an officer, shareholder, or director of HostPapa and has not in any way been connected to the operations of HostPapa at any time, past or present, except through Promo People Corp. Mr. Whitling concludes by stating that at no time did he ever have any authority from HostPapa or any of its authorized officers or directors to accept service of any documents from GoDaddy on HostPapa's behalf.

In addition, HostPapa's chief executive officer, Mr. Opalchuk, confirms in his declaration that Mr. Whitling and Promo People Corp. provide marketing consulting services to HostPapa and other companies but are not HostPapa's agents and are not authorized to accept service of a subpoena on behalf of HostPapa. Mr. Opalchuk adds that neither HostPapa nor Promo People Corp. has any direct or indirect ownership interest in the other. GoDaddy offers no evidence to the contrary.

On December 1, 2020, HostPapa's general counsel, David Woolford, sent an email to GoDaddy's counsel stating that that HostPapa objected to GoDaddy's subpoena as invalidly served. In that email, Mr. Woolford explained, in relevant part:

> HostPapa also objects to the subpoena as invalidly served. HostPapa is a Canadian corporation with its primary place of business in Canada. Accordingly, GoDaddy is required to comply with international and Canadian protocols for service of process.

ECF 2-2 at 30.

Although GoDaddy and HostPapa continued to discuss GoDaddy's subpoena, a final

agreement does not appear to have been reached. On February 12, 2021, Mr. Woolford sent an

email to GoDaddy's counsel, stating:

> Thanks for reaching out. Our position is still that HostPapa has not
> been validly serviced any request for documents. GoDaddy has not
> obtained any letter rogatory[1] nor sought to enforce such a letter.
> GoDaddy's service of subpoenas on Chris Whitling (in Texas) and
> David Anderson (in Oregon) does not constitute valid service on
> HostPapa. Neither Mr. Whitling nor Mr. Anderson is an employee
> of Hostpapa, nor is either person authorized to accept service on
> behalf of HostPapa. Absent a validly served request for documents,
> HostPapa is under no obligation to produce any documents to you
> or your client in this regard.
>
> If GoDaddy makes valid service of its requests on HostPapa, we
> would be willing to discuss them with you further. As I previously
> mentioned to your colleague Paula, based on the requests listed in
> the subpoenas you have provided, we have serious concerns that
> GoDaddy's requests are very (likely too) broad and implicate
> sensitive business information. For those reasons, we anticipate we
> will be objecting to GoDaddy's requests in any event.

ECF 2-2 at 41. On February 25, 2021, GoDaddy filed the pending motion to compel.

## DISCUSSION

The threshold question before the Court is whether GoDaddy adequately served its

Rule 45 subpoena on nonparty HostPapa, a Canadian corporation. GoDaddy makes three

arguments regarding service. First, GoDaddy asserts that it properly served HostPapa in the

United States by serving GoDaddy's agents, Mr. Anderson in Oregon and Mr. Whitling in

---

[1] "A letter rogatory, or 'letter of request,' is a formal written communication sent by a
court in one country to a court in a foreign country requesting the assistance of the foreign court
in obtaining testimony or documentary or other evidence of a witness within the jurisdiction of
the foreign court." Pamela D. Pengelley, *A Compelling Situation: Enforcing American Letters
Rogatory in Ontario*, 85 Canadian B. Rev. 345, 346 (2006).

Texas.[2] Second, GoDaddy argues that HostPapa waived any objection to service by failing to object within 14 days of receiving GoDaddy's subpoena. Third, GoDaddy contends that HostPapa consented to service by mail from the United States, although GoDaddy raises this argument for the first time in its reply brief.

## A.  Service

The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (also known as the "Hague Evidence Convention"), 23 U.S.T. 2555, is a permissible, but not mandatory, alternative to the Federal Rules of Civil Procedure for the taking of evidence abroad, both from litigants as well as nonparties. In *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522 (1987), the Supreme Court held that the Hague Evidence Convention does not require its use to the exclusion of other discovery procedures whenever evidence located abroad is sought for use in an American court, nor does it require that its procedures be used first. *Id.* at 533-42. Further, the Hague Evidence Convention is not available to GoDaddy here because Canada is not a signatory to the Hague Evidence Convention. *See Allianz Sigorta, A.S. v. Ameritech Indus., Inc.*, 2016 WL 1127705, at *2 (E.D. Cal. Mar. 23, 2016) (noting that Canada is not a party to the Hague Evidence Convention);

---

[2] If service on Mr. Anderson in Oregon is not effective but service on Mr. Whitling in Texas were proper, the Court would then need to decide whether the District of Oregon, rather than a federal court in Texas, would be the correct venue to consider GoDaddy's motion to enforce the subpoena issued to HostPapa. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move *the court for the district where compliance is required* for an order compelling production or inspection.") (emphasis added). Because service on neither Mr. Anderson nor Mr. Whitling is effective, the Court need not reach the issue of venue.

*Triumph Aerostructures, LLC v. Comau, Inc.*, 2015 WL 5502625, at *3 (N.D. Tex. Sept. 18, 2015) (same). Canada, however, is a signatory to the Hague Service Convention.[3]

A recent decision from the District of Vermont explains one way in which a party in a lawsuit in the United States may obtain evidence located in Canada.

> Canada, which is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, applies its own "domestic statute or common law" to letters rogatory. . . . Under the Canada Evidence Act, a Canadian court maintains the discretion to "command the attendance of [a] party or witness for the purpose of being examined" when "any court or tribunal outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a party or witness within the jurisdiction of the first mentioned court[.]" Canada Evidence Act, R.S.C. 1985, c. C–5, § 46(1).

*Goldberg v. Dufour*, 2020 WL 373206, at *4 (D. Vt. Jan. 23, 2020).

Under federal law, the Department of State may "receive a letter rogatory issued, or request made, by a tribunal in the United States, to transmit it to the foreign or international tribunal, officer, or agency to whom it is addressed, and to receive and return it after execution." 28 U.S.C. § 1781(a)(2). Section 1781, also does not preclude "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner." 28 U.S.C. § 1781(b)(2).

---

[3] The Hague Evidence Convention is distinct from the Hague Convention of 15 November 1965 on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (also known as the "Hague Service Convention"), 20 U.S.T. 361. *See generally Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (holding that the Hague Service Convention does not apply when process is served on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service).

But this, too, is not the only way to obtain evidence located abroad, including from Canada. When a federal court has jurisdiction over a person in the United States and that person has "possession, custody, or control," over records located abroad, the person under the court's jurisdiction may be ordered to produce those records. *See, e.g.*, *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638 (D. Or. 2015) (noting that "control" is defined as the legal right to obtain documents upon demand and that control may be established by the existence of a principal-agent relationship). The relevant question would then be whether the sought-after documents are under the effective control of the person who is under the jurisdiction of the federal court. *Id*. GoDaddy, however, does not argue that the documents it seeks from HostPapa are under the effective control of either Mr. Anderson (or Canvas Dreams or Canvas Host) or Mr. Whitling.

Instead, GoDaddy argues that Mr. Anderson (or Canvas Dreams or Canvas Host) and Mr. Whitling are "agents" of HostPapa, such that service on them is sufficient to bring HostPapa, as principal, within the jurisdiction of the federal court in Oregon (or Texas, in the case of Mr. Whitling). In making this argument GoDaddy relies on Rule 4 of the Federal Rules of Civil Procedure and argues that because service on an agent of HostPapa (*i.e.,* Mr. Anderson, Canvas Dreams, Canvas Host, or Mr. Whitling) is sufficient to satisfy Rule 4 for purposes of "service of process," it is also sufficient to show service on that agent under Rule 45.

GoDaddy is correct that some courts have analyzed service of a Rule 45 subpoena to a nonparty by looking to Rule 4. *See, e.g., Sanchez Y Martin v. Dos Amigos, Inc.*, 2018 WL 238750, at *3 (S.D. Cal. May 24, 2018) ("Rule 45 does not specify what constitutes personal service on a corporation in the United States or in a foreign country. To fill this gap, courts have relied upon the service of process requirements on corporations set forth in Rule 4 of the Federal

Rules of Civil Procedure."); *Paisley Park Enters., Inc. v. Boxill*, 2019 WL 1036059, at *3 (D.

Minn. Mar. 5, 2019) (same); *see also Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012)

(holding that Rule 45 authorizes service of a subpoena by certified mail based on comparison to

Rule 4); *In re Subpoena to VaughnPerling*, 2019 WL 8012372, at *4 (C.D. Cal. Dec. 2, 2019)

("[T]he court sees no policy distinction between Rules 4, 5 and 45, such that service other than

personal service should be sufficient under the first two but not the third.") (quoting *Green v.*

*Baca*, 2005 WL 283361, at *1 n. 1 (C.D. Cal. Jan. 31, 2005)).

In response, however, HostPapa calls the Court's attention to the Advisory Committee

Notes to the 1993 amendment to Rule 4. Those notes explain:

> **The Caption of the Rule**. Prior to this revision [in 1993], Rule 4
> was entitled "Process" and applied to the service of not only the
> summons but also other process as well, although these are not
> covered by the revised rule. . . . *Service of a subpoena is governed*
> *by Rule 45*, and service of papers such as orders, motions, notices,
> pleadings, and other documents is governed by Rule 5.
>
> *The revised rule is entitled "Summons" and applies only to that*
> *form of legal process*. Unless service of the summons is waived, a
> summons must be served whenever a person is joined as a party
> against whom a claim is made. Those few provisions of the former
> rule which relate specifically to service of process other than a
> summons are relocated in Rule 4.1 in order to simplify the text of
> this rule.

Fed. R. Civ. P. 4, Advisory Committee Notes—1993 Amendments (emphasis added).

Other cases follow the approach described by the Advisory Committee. *See, e.g., Viasat,*

*Inc.*, 2014 WL 12577593, at *5 ("Rule 4 is inapplicable to service of a subpoena."); *see also*

*F.T.C. v. Compagnie de Saint-Gobain-Pont- à-Mousson*, 636 F.2d 1300, 1311 (D.C. Cir. 1980)

("The distinction between service of notice and service of compulsory process is a crucial one

under principles of both domestic and international law."); *Blumenthal Distrib., Inc. v. Herman*

*Miller, Inc*., 2015 WL 12778353, at *2 (C.D. Cal. Oct. 22, 2015) ("[S]ervice of [a subpoena] is more restricted than the methods of service available for a complaint [under Rule 4].").

The leading treatise on federal civil procedure describes this development and refers to the position urged by GoDaddy as an "emerging minority position." The treatise explains:

> The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required. The use of the word "delivering" in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally. Under this construction, contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness. Moreover, unlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice. Service on an agent of a corporation is sufficient, however, even though the agent on whom service is made does not have control of the books and records required to be produced, since it is not the agent who is to respond to the subpoena but the corporation, and the agent in that situation is merely the vehicle for reaching the corporation. A corporation is amenable to service of a subpoena under Rule 45(b) in any forum in which it has sufficient minimum contacts.
>
> In recent years a growing number of cases have departed from the view that personal service is required and alternatively have found service of a subpoena under Rule 45 proper absent personal service. This emerging minority position could cause confusion and may prompt clarification of the rule. Until that happens, however, personal delivery of the subpoena is the safest course for counsel to follow.

9A Charles H. Wright and Arthur R. Miller, Fed. Prac. and Proc. (Wright & Miller) § 2454 (3d ed. Oct. 2020 update).

In the absence of direction from the Ninth Circuit, the Court chooses to follow the analysis provided in Wright & Miller on this point, which is based on the text of Rule 45, and

declines to follow the "emerging minority position."[4] Thus, the alternative forms of service described in Rule 4, other than personal service on an agent of a corporation, are insufficient service under Rule 45.

But GoDaddy argues that Mr. Anderson (or at least Canvas Dreams or Canvas Host) and Mr. Whitling are agents of HostPapa and, thus, GoDaddy has properly served its subpoena by personally serving these agents. If GoDaddy is correct that Mr. Anderson (or Canvas Dreams or Canvas Host) or Mr. Whitling are agents of HostPapa, then GoDaddy will have effected proper service of its Rule 45 subpoena, regardless of whether the Court follows the majority position or the emerging minority position discussed above. The Court, however, concludes that, based on the evidence presented, neither Mr. Anderson (nor Canvas Dreams nor Canvas Host) nor Mr. Whitling are agents of HostPapa.

---

[4] Several circuits other than the Ninth Circuit have discussed this issue and appear to be split. In *F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980), the D.C. Circuit stated,

> By contrast, Federal Rule 45(c), governing subpoena service, does not permit any form of mail service, nor does it allow service of the subpoena merely by delivery to a witness' dwelling place. Thus, under the Federal Rules, compulsory process may be served upon an unwilling witness only in person.

*Id*. at 1312-13 (footnotes omitted). Similarly, the Fifth Circuit held that proper service of a subpoena under Rule 45 requires personal delivery. *See In re Dennis*, 330 F.3d 696, 704-705 (5th Cir. 2003). On the other hand, the Seventh Circuit commented in *dicta* that service of a subpoena by certified mail with proof of delivery would satisfy Rule 45's requirement of personal service on the grounds that such service by a postal service mail carrier is personal delivery. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012). The Eighth Circuit, however, held that serving a subpoena on a nonparty by facsimile and regular mail did not comply with the requirement under Rule 45 that service be made by "delivering a copy" of the subpoena to the person. *See Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) ("When a non-party is served, the method of service needs to be one that will ensure the subpoena is placed in the actual possession or control of the person to be served.").

GoDaddy asserts that "[p]ublicly available documents make it clear that HostPapa purchased Canvas Dreams, LLC d/b/a Canvas Host, LLC." ECF 7 at 11 (citing ECF 2-2, Ex. D). Exhibit D is a press release issued by HostPapa announcing the "acquisition of Canvas Host." That is not the same, however, as HostPapa purchasing the limited liability company, Canvas Dreams, LLC. Moreover, both HostPapa's Chief Executive Officer, Mr. Opalchuk, and Canvas Dreams, LLC's owner, Mr. Anderson, have stated under oath that HostPapa only purchased certain assets from Canvas Dreams, including the domain name "canvashost.com" and the customer list and other digital assets associated with Canvas Host. ECF 6-3 and ECF 6-4. Mr. Anderson states, under oath, that he did not sell to HostPapa the legal entity Canvas Dreams, LLC. ECF 6-3. Further, Mr. Opalchuk states, under oath, that HostPapa has no employees or subsidiaries in the United States. ECF 6-4.[5] Thus, GoDaddy has not shown that it has personally served any agent of HostPapa in the United States.

## B.  Waiver

GoDaddy argues that HostPapa has waived all objections to GoDaddy's subpoena, including improper service, by failing timely to object. Rule 45(d)(2)(B) provides, in relevant part:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. *The objection must be served before the*

---

[5] Mr. Opalchuk's declaration, in conjunction with Mr. Whitling's declaration (ECF 6-2), also shows that Mr. Whitling in Texas is not an agent of HostPapa, notwithstanding anything that Mr. Whitling has said on his personal social media pages. GoDaddy has not provided any evidence showing that HostPapa ever described Mr. Whitling as an officer, employee, or agent of HostPapa. *See generally Eads v. Borman*, 351 Or. 729, 735-36 (2012) ("[A]n agent's actions, standing alone and without some action by the principal, will not give rise to apparent authority.").

> earlier of the time specified for compliance or 14 days after the
> subpoena is served.

Fed. R. Civ. P. 45(d)(2)(B) (emphasis added); *see generally McCoy v. Sw. Airlines Co.*, 211

F.R.D. 381, 385 (C.D. Cal. 2002) (noting that "a nonparty's failure to timely make objections to

a Rule 45 subpoena *duces tecum* generally requires the court to find that any objection, including

attorney-client privilege, has been waived").[6]

GoDaddy's subpoena was delivered to Mr. Anderson and Mr. Whitling on November 18,

2020, with a return date of December 2, 2020. ECF 2 at 3, ¶ 6 and ¶ 10. Fourteen days after

November 18 is December 2. On December 1, 2020, HostPapa's General Counsel Mr. Woolford

sent an email to outside counsel for GoDaddy objecting to the subpoena and stating, in relevant

part:

> I am HostPapa, Inc.'s General Counsel and, in that capacity, am in
> receipt of a subpoena directed to HostPapa by GoDaddy.com,
> LLC. HostPapa objects to each of the requests in the subpoena on
> the grounds of relevance, proportionality and undue burden. . . .
>
> HostPapa also objects to the subpoena as invalidly served.
> HostPapa is a Canadian corporation with its primary place of
> business in Canada. Accordingly, GoDaddy is required to comply
> with international and Canadian protocols for service of process.

ECF 2-2 at 30 (Ex. I); *see also* ECF 2 at 4, ¶ 11.

GoDaddy's outside counsel and Mr. Woolford continued having discussions regarding

the subpoena, including whether an accommodation could be reached. According to GoDaddy,

GoDaddy's outside counsel and Mr. Woolford discussed the matter on January 29, 2021, and

---

[6] The Court need not decide whether a subpoena recipient who has not been validly served still must object within the time specified for compliance or 14 days from the purported service, whichever is earlier, to avoid waiving an objection of improper service. Here, HostPapa timely asserted its objections, both before the time specified for compliance and within 14 days after the purported service.

Mr. Woolford "indicated that HostPapa was inclined to comply with the subpoena, but was still considering the objections HostPapa has previously asserted." ECF 2 at 5, ¶15. GoDaddy continues: "These meet and confer efforts continued over the next two weeks." *Id*. at ¶ 16. Finally, on February 12, 2021, "Mr. Woolford indicated that HostPapa's 'position is still that HostPapa has not been validly served.'" *Id*. at ¶ 17. According to GoDaddy's outside counsel, "I responded to Mr. Woolford to note that we respectfully disagreed with his position on service, and that we would move to compel given that the parties had reached an impasse." *Id*.

GoDaddy filed its motion to compel on February 25, 2021. ECF 1. GoDaddy's argument that HostPapa has waived all objections to GoDaddy's subpoena, including improper service, by failing timely to object is without merit.

## C.  Consent

In its reply brief, GoDaddy argues for the first time that "HostPapa's own Civil Subpoena Policy supports the conclusion that HostPapa waived any objection to personal jurisdiction." ECF 7 at 14. With its reply, GoDaddy filed a document that purports to be from HostPapa's website and is titled "Civil Subpoena Policy." That document states, in relevant part:

> 1.    Disclosure of Customer Information: HostPapa's Privacy Policy forbids the disclosure of customer account and personal information except in limited circumstances, including:
>
> (a)    with express permission from the customer;
>
> (b)    when required or permitted by law; and
>
> (c)    to comply with legal process properly served on HostPapa or one of its affiliates by court order and/or law enforcement.
>
> 2.    Request Notice: If you seek the identity or information related to a HostPapa customer in connection with a civil legal

> matter, you must fax, mail, or serve HostPapa with a valid
> subpoena or court order. . . .

ECF 8-1 at 2 (Ex. M).

It is unclear whether this policy applies only for subpoenas issued in Canada or is otherwise limited to certain types of customer information. Further, it is unclear whether this policy only applies to requests for information about "customers" of HostPapa and whether SiteLock is a "business partner" of HostPapa, rather than a customer.

Because GoDaddy asserted this argument for the first time in its reply brief, HostPapa did not have an opportunity to address it in HostPapa's response to GoDaddy's motion. Because GoDaddy's raises this new argument for the first time in its reply brief, the Court declines to consider it. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (noting that "arguments raised for the first time in a reply brief are waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court DENIES Defendant GoDaddy.com, LLC's Motion to Compel Response to Rule 45 Subpoena Directed to HostPapa, Inc. (ECF 1).

**IT IS SO ORDERED**.

DATED this 12th day of April, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 20 – OPINION AND ORDER